THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:20-cr-00018-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| Plaintiff,    ) | |
| vs.    ) | **O R D E R** |
| DAVID DONNIE LUKER,    ) | |
| Defendant.    ) | |

**THIS MATTER** is before the Court on the Defendant's Motion Compassionate Release [Doc. 26]; the Government's Response in Opposition to Defendant's Motion for Compassionate Release [Doc. 27]; and the Defendant's Reply [Doc. 28].

**I.    BACKGROUND**

On November 18, 2018, the Jackson County Sheriff's Office received a call about a suspicious vehicle parked outside a residence in Tuckasegee, North Carolina. Deputies arrived at the residence to find the Defendant David Donnie Luker and a female near the vehicle. [Doc. 16: PSR at 4 ¶ 11]. The Defendant was arrested on several open warrants. [Id.]. During a search incident to arrest, deputies located three bullets in the Defendant's pocket as well as a Winchester rifle and a .12 gauge shotgun in the backseat of the

vehicle. [Id.]. The Defendant had previously been convicted of a felony offense punishable by a term of imprisonment in excess of one year, and was therefore prohibited from possessing the firearms and ammunition. [Id.]. The Defendant was subsequently charged with violating 18 U.S.C. § 922(g)(1). [Id.].

On November 25, 2019, Jackson County Sheriff's Deputies and an ATF Special Agent served an arrest warrant on the Defendant for his outstanding federal charges. [Id. at ¶ 12]. Officers conducted a search of the Defendant's vehicle following his arrest and discovered a set of digital scales, a spoon with white residue, and a black eyeglass case containing multiple baggies containing suspected methamphetamine. [Id. at ¶ 13]. Officers also located a HAM radio which was set to listen to the Jackson County Sheriff's Office channel; ledgers containing information about the sale of drugs; and two boxes of ammunition. [Id.]. Subsequent testing established that the baggies seized during the search contained 25 grams of actual methamphetamine. [Id. at ¶ 14].

In February 2020, the Defendant pled guilty to one count of possession with intent to distribute a quantity of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). [Docs. 1, 8]. In anticipation of sentencing, a Presentence

2

Case 1:20-cr-00018-MR-WCM   Document 29   Filed 12/09/21   Page 2 of 10

Report (PSR) was prepared. In the PSR, the probation officer noted that prior to his arrest in November 2019, the Defendant was using methamphetamine daily. [Doc. 16: PSR at ¶ 71]. The Defendant further reported fathering four children, ranging in ages of 25 years to three weeks, including a ten-year-old son, E.L. [Id. at ¶¶ 64-67]. The probation officer noted that E.L. resided with his mother and that the Defendant had no contact with the child as the mother had stopped the Defendant from contacting his son. [Id. at ¶ 66].

In July 2020, the Court sentenced the Defendant to a term of 60 months' imprisonment to be followed by four years of supervised release. [Doc. 19: Judgment]. In the Judgment, the Court made the specific recommendation to the Bureau of Prisons that the Defendant participate in any available substance abuse treatment program and, if eligible, receive the benefits of 18 U.S.C. § 3621(e)(2) (allowing the BOP to reduce a custodial sentence as an incentive for the successful completion of a residential substance abuse treatment program). [Id. at 2].

The Defendant is currently housed at FCI Beckley, and his projected release date is February 27, 2023.[1] The Defendant, however, is participating

---

[1] See https://www.bop.gov/inmateloc/ (last visited Dec. 7, 2021).

in the Residential Drug Abuse Program (RDAP), with a projected graduation date of April 2022. Upon graduation, he may be eligible for immediate release pursuant to § 3621(e)(2). [See Doc. 28 at 5].

The Defendant now seeks a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 28]. For grounds, the Defendant states that the mother of his son, E.L., has died, and that his early release is warranted so that he may care for his son. Additionally, the Defendant states that he has a number of health conditions which make him more susceptible to serious illness or death from COVID-19. [Doc. 26].

The Court ordered the Government to respond to the Defendant's motion. [Text-Only Order entered Oct. 12, 2021]. The Government filed its Response on November 10, 2021. [Doc. 27]. The Defendant filed a Reply on November 29, 2021. [Doc. 28]. Accordingly, this matter is ripe for disposition.

## II.  DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to

4

Case 1:20-cr-00018-MR-WCM   Document 29   Filed 12/09/21   Page 4 of 10

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government concedes that the Defendant has exhausted the necessary administrative remedies. [Doc. 27 at 2]. Accordingly, the Court will proceed to address the merits of the Defendant's motion.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. Specifically, the application notes to this policy statement set forth the various circumstances under which the Court can determine that "extraordinary and compelling reasons exist," including: the medical condition of the defendant, the age of the

5

Case 1:20-cr-00018-MR-WCM   Document 29   Filed 12/09/21   Page 5 of 10

defendant, certain family circumstances, or other reasons. This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, the Court recognized, that the policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

Here, the Defendant argues that his obesity and hypertension place him at a significant risk of serious illness or death from the delta variant of COVID-19. [Docs. 26 at 1-3; 27 at 2]. The BOP medical records reviewed

6

Case 1:20-cr-00018-MR-WCM   Document 29   Filed 12/09/21   Page 6 of 10

by the Government, however, indicates that the Defendant's health conditions are being monitored and treated with appropriate medication. Further, there is nothing in the record to indicate that these conditions are debilitating or otherwise limit the Defendant's ability to administer self-care while in prison. Moreover, the Defendant has been fully vaccinated against the coronavirus. [See Doc. 27-1]. According to the CDC, vaccine effectiveness studies indicate that the mRNA COVID-19 vaccines can reduce the risk of serious illness among people who are fully vaccinated by 90 percent or more.[2] While the Defendant still faces some risk of infection (as do all of those who have been vaccinated against the virus), the fact that the Defendant faces a slight risk of contracting the virus while incarcerated, without more, is not sufficient to justify the relief he requests. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); United States v. Lemons, 15 F. 4th 747, 751 (6th Cir. Oct.

---

[2] See https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Dec. 7, 2021).

7

Case 1:20-cr-00018-MR-WCM   Document 29   Filed 12/09/21   Page 7 of 10

8, 2021) ("a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction….[T]o the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19."). For all these reasons, the Defendant's chronic health conditions do not constitute an extraordinary and compelling to justify his early release.

The Defendant also cites the death of the mother of one of his sons, E.L., as an extraordinary and compelling reason for his release. [Docs. 26 at 1; 28 at 3-4]. The Defendant represents that upon his mother's death, E.L. was placed in the temporary custody of his aunt; that prior to his incarceration, the Defendant had a "great relationship" with E.L.; and that the Defendant regularly supported E.L. through child support payments and gifts. [Doc. 28 at 3-4]. The PSR notes, however, that prior to the Defendant's incarceration, he had no contact with E.L. because E.L.'s mother had prohibited contact. [Doc. 16: PSR at 14 ¶ 66]. Additionally, the Defendant was a daily user of methamphetamine prior to his incarceration. [Id. at 15 ¶ 71].

It is evident that the Defendant's history of substance abuse and incarceration has contributed to him not being present for E.L. The Defendant is currently enrolled in the RDAP, an intensive, nine-month substance abuse treatment program within the BOP and anticipates graduating from the program in April 2022. Completion of the RDAP will substantially increase the Defendant's chances of maintaining sobriety and successfully re-entering society. Granting the Defendant compassionate release now would deprive him of completing his substance abuse treatment and would greatly diminish his ability to provide a safe and stable environment for his child in the future. Under these circumstances, the Court concludes that the death of E.L.'s mother is not an extraordinary and compelling reason for his immediate release.

Additionally, evaluation of the § 3553(a) factors weigh in favor of the Defendant's continued incarceration. First, the Defendant's crime of conviction was extremely serious, as the Defendant was found to be in possession of 25 grams of actual methamphetamine and multiple firearms. The Defendant is 44 years old [see Doc. 16: PSR at 2], with no significant employment history [see id. at 15 ¶ 73]. He has a history of daily methamphetamine use and, prior to his enrollment in the RDAP, had never

9

Case 1:20-cr-00018-MR-WCM   Document 29   Filed 12/09/21   Page 9 of 10

sought substance abuse treatment. Additionally, the Defendant has a significant criminal history dating from the time he was 16 years old, including convictions for carrying a concealed weapon, possession of a weapon on school property, possession of methamphetamine, fleeing to elude arrest, escape from a local jail, possession of a firearm by a felon, and habitual felon. [Doc. 16: PSR at 6-10 ¶¶ 32-43]. While the Defendant's conduct while incarcerated at the Bureau of Prisons has been good, the Defendant's history and characteristics demonstrate that his continued incarceration remains necessary to protect the public.

For all these reasons, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors weigh in favor of his continued incarceration. Accordingly, the Defendant's motion for compassionate release is denied.

**IT IS, THEREFORE, ORDERED** that the Motion for Compassionate Release [Doc. 26] is **DENIED**.

**IT IS SO ORDERED.**

Signed: December 8, 2021

Martin Reidinger
Chief United States District Judge

10

Case 1:20-cr-00018-MR-WCM   Document 29   Filed 12/09/21   Page 10 of 10